IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-186

 No. COA20-147

 Filed 4 May 2021

 Guilford County, Nos. 15 CRS 93682, 93853

 STATE OF NORTH CAROLINA

 v.

 SHANION J. DONTA WATSON

 Appeal by defendant from judgments entered 12 July 2019 by Judge David L.

 Hall in Guilford County Superior Court. Heard in the Court of Appeals 10 March

 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorneys General Anne
 M. Middleton and Sherri Horner Lawrence, for the State.

 Michael E. Casterline for defendant-appellant.

 ZACHARY, Judge.

¶1 Defendant Shanion J. Donta Watson appeals from judgments entered upon a

 jury’s verdicts finding him guilty of first-degree murder under the felony-murder rule,

 felony larceny of a motor vehicle, and felony child abuse inflicting serious mental

 injury. On appeal, Defendant argues that we must vacate his first-degree murder

 conviction for two reasons: first, because the predicate felony underlying his

 conviction under the felony-murder rule—statutory rape of a child under the age of

 13—lacks an intent element, and second, because the jury acquitted Defendant of the
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 predicate felony. After careful review, we conclude that Defendant received a fair

 trial, free from error.

 Background

¶2 In December 2015, Chiquita Adams was living with her 11-year-old daughter,

 Tracy,1 in Greensboro, North Carolina. Defendant was Ms. Adams’ boyfriend. On the

 night of 24 December 2015, Ms. Adams and Tracy stayed in a hotel in High Point,

 North Carolina. Ms. Adams drove them there, and Defendant arrived at the hotel

 about an hour after Ms. Adams and Tracy checked in.

¶3 Tracy fell asleep at around 10:00 p.m. She awoke at approximately 2:00 a.m.

 and saw Defendant on the floor next to her bed. Defendant grabbed Tracy’s leg, picked

 her up, and carried her to the bathroom; she could not scream because he had his

 hand covering her mouth. However, Tracy was able to grab a pillow from the bed and

 threw it toward her mother. After Defendant placed Tracy on the bathroom sink and

 told her to “be quiet,” Ms. Adams opened the bathroom door. Tracy told her mother,

 “Please don’t leave me,” and Defendant told Ms. Adams, “don’t believe her.” When

 Ms. Adams approached Defendant, he knocked her to the floor and began hitting and

 choking her. After Ms. Adams lost consciousness, Defendant placed her on the bed

 and returned to the bathroom, telling Tracy, “pull your pants down.” Ms. Adams

 1 In accordance with N.C.R. App. P. 42, we refer to the juvenile by a pseudonym in

 order to protect her identity.
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 awakened, and she and Tracy tried to exit the hotel room, but Defendant stopped

 them. Ms. Adams and Defendant then engaged in a prolonged struggle. At one point,

 Tracy tried to use her cell phone—a Christmas gift from her father—to call 911, but

 Defendant grabbed it from her and put it in his pocket.

¶4 While Ms. Adams fought with Defendant, Tracy was in the bathroom

 screaming and praying. When she looked out of the bathroom, she saw her mother on

 the bed, not moving. Defendant again told Tracy to pull her pants down; this time,

 she did, and Defendant had sexual intercourse with her on the bed. Eventually,

 Defendant let her get up, and she ran to the bathroom and locked the door.

¶5 At some point, Tracy fell asleep in the hotel bed. When she awoke at around

 11:00 a.m., Defendant was still in the hotel room. Defendant told Tracy that Ms.

 Adams was asleep. Tracy touched her mother’s body and noticed that she was not

 breathing. Tracy had “a feeling that she was dead” but “didn’t want to believe it fully.”

 Defendant told Tracy to take a shower, so she did, and when she came out of the

 bathroom, Defendant had left with Ms. Adams’ car keys. The hotel housekeeper came

 to the door and asked where Tracy’s mother was. At first, Tracy told the housekeeper

 that her mother was asleep. Then she began to cry and said, “I don’t know, I don’t

 know. Help me, help me.” The housekeeper called 911.

¶6 The High Point Fire Department responded to the call first. After reporting

 that Ms. Adams was dead, the firefighters waited for law enforcement officers and
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 paramedics to arrive. Upon arrival at the scene, a High Point Police Department

 officer spoke with Tracy, who told him that Defendant was her mother’s boyfriend

 and provided Defendant’s name. She told police that her cell phone and her mother’s

 car were missing, and that she had tried to wake her mother up that morning, but

 she could not rouse her. Tracy appeared to law enforcement officers to be in shock;

 she did not tell the officers about the altercation between Defendant and her mother

 or that Defendant had sexual intercourse with her.

¶7 A phone carrier assisted detectives in determining the location of Tracy’s cell

 phone, which was “pinging” from an apartment in High Point. Upon their arrival to

 the apartment, the detectives spotted Ms. Adams’ tan Hyundai Sonata parked out

 front. A canine officer discovered Tracy’s cell phone behind the apartments. A phone

 carrier forwarded to detectives text messages sent from Defendant’s cell phone to his

 sister’s cell phone. Detectives went to Defendant’s sister’s apartment, and she told

 them that Defendant had been there earlier that afternoon, showered, changed his

 clothes, and left. Officers collected Defendant’s discarded clothes, which included

 clothing that matched the outfit he appeared to be wearing in video-camera footage

 captured when he left the hotel room. The shirt had a reddish stain on it.

¶8 An officer took Tracy to the Hope House Children’s Advocacy Center (“CAC”).

 A child interviewer with the CAC told Tracy that her mother was dead. Tracy told

 the interviewer that she had been asleep all night and did not hear anything.
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

¶9 Detectives arrested Defendant at his sister’s apartment at around 10:00 p.m.

 on 26 December 2015.

¶ 10 On 28 December 2015, the Medical Examiner conducted an autopsy of Ms.

 Adams’ body that revealed that she had facial lacerations; bruises, abrasions, and

 lacerations in her mouth and on her tongue; and evidence of strangulation, including

 hemorrhages of the eyes, an abraded contusion on her neck, hemorrhaging in the

 muscles of her neck, and two fractures of the cricoid cartilage. The medical examiner

 concluded that Ms. Adams died as a result of strangulation.

¶ 11 On 28 December 2015, Tracy’s father arrived in North Carolina from Texas to

 pick up Tracy, and Tracy moved to Texas to live with him. In Texas, Tracy struggled

 in school, did not have many friends, did not want to sleep in a room by herself, and

 suffered from panic attacks. Tracy still had not told anybody what had happened to

 her or what she saw. Finally, in July 2017, she told her father what had happened.

 During an interview at a CAC in Texas, Tracy told an interviewer that Defendant

 had raped her and killed her mother.

¶ 12 On 12 July 2016, a Guilford County grand jury indicted Defendant for larceny

 of a motor vehicle, child abuse inflicting serious mental injury, and first-degree

 murder. On 15 August 2017, a Guilford County grand jury indicted Defendant for

 statutory rape of a child by an adult, in violation of N.C. Gen. Stat. § 14-27.23.

¶ 13 Defendant was tried during the 24 June 2019 session of Guilford County
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 Superior Court before the Honorable David L. Hall. Defendant represented himself,

 with standby counsel appointed. At the close of the State’s evidence, Defendant

 moved to dismiss the charges for insufficiency of the evidence. The trial court denied

 Defendant’s motion. The trial court instructed the jury on first-degree murder, on the

 bases of both premeditation and deliberation and on the felony-murder rule, with

 statutory rape as the predicate felony. The trial court also instructed the jury on

 second-degree murder, statutory rape of a child by an adult, felony larceny of a motor

 vehicle, and felony child abuse inflicting serious mental injury.

¶ 14 The jury convicted Defendant of first-degree murder under the felony-murder

 rule, felony larceny of a motor vehicle, and felony child abuse inflicting serious mental

 injury. The jury acquitted Defendant of statutory rape. After the jury rendered its

 verdicts, standby counsel renewed Defendant’s motion to dismiss for insufficiency of

 the evidence.

¶ 15 The trial court consolidated judgment on Defendant’s convictions for felony

 larceny of a motor vehicle and felony child abuse, entering one judgment on those

 convictions and one judgment on the conviction for first-degree murder. The trial

 court sentenced Defendant to life imprisonment without the opportunity for parole

 for the murder conviction, and imposed a consecutive 19- to 32-month sentence for

 the larceny and child-abuse convictions. Defendant noticed appeal in open court.

 Discussion
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

¶ 16 On appeal, Defendant contends that this Court must vacate his conviction for

 first-degree murder based on the felony-murder rule for two interrelated reasons.

 First, Defendant contends that the predicate felony of statutory rape of a child under

 the age of 13 cannot support a felony-murder conviction because statutory rape lacks

 an intent element. Defendant argues that, because statutory rape is a strict-liability

 offense, it therefore lacks an intent element, and only attempted statutory rape—

 which Defendant concedes does include an intent element—could support felony

 murder. However, Defendant argues that in the instant case, the trial court did not

 properly instruct the jury on the charge of attempted statutory rape, and therefore,

 neither completed nor attempted statutory rape could support the felony murder

 conviction.

¶ 17 Defendant also raises a second, related argument: he contends that his first-

 degree murder conviction must be vacated because the jury acquitted him of the

 predicate felony underlying the State’s theory of felony murder. According to

 Defendant, because the jury was not instructed on attempted statutory rape, it could

 not properly consider that offense in support of its felony-murder verdict; thus, his

 first-degree murder conviction must be vacated.

¶ 18 After careful review, we hold that statutory rape sufficiently supported

 Defendant’s felony-murder conviction on the present facts, and that he is not entitled

 to vacatur of his conviction based on his acquittal of the predicate felony. Having so
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 concluded, we need not address Defendant’s argument that the jury was not properly

 instructed on attempted statutory rape. Therefore, we conclude that Defendant

 received a trial free from error.

 I. Preservation

¶ 19 As a preliminary matter, although Defendant characterizes the trial court’s

 alleged error as one relating to erroneous jury instructions, in fact, much of

 Defendant’s argument sounds in sufficiency of the evidence issues. However, defense

 counsel conceded at oral argument before this Court that the State presented

 sufficient evidence to send the charge of statutory rape to the jury. Defendant’s

 argument on appeal is, in essence, an argument that the charge of completed

 statutory rape is insufficient as a matter of law to support a felony-murder conviction,

 and in the alternative, that an acquittal of statutory rape renders the conduct

 insufficient as a matter of law to support a felony-murder conviction. The State

 argues that Defendant failed to preserve any sufficiency of the evidence issues for

 appeal by failing to make a properly timed motion to dismiss. We conclude that

 Defendant adequately preserved any sufficiency arguments.

¶ 20 At the close of the State’s evidence, Defendant moved to dismiss the charges

 for insufficiency of the evidence, which the trial court denied. Standby counsel, on

 behalf of Defendant, renewed the motion to dismiss after the jury rendered its

 verdicts but before the trial court entered judgment. This motion complied with N.C.
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 Gen. Stat. § 15A-1227, which governs motions for dismissal for insufficient evidence:

 (a) A motion for dismissal for insufficiency of the evidence
 to sustain a conviction may be made at the following times:

 ....

 (3) After return of a verdict of guilty and before entry
 of judgment.

 (b) Failure to make the motion at the close of the State’s
 evidence or after all the evidence is not a bar to making the
 motion at a later time as provided in subsection (a).

 N.C. Gen. Stat. § 15A-1227(a)(3), (b) (2019).

¶ 21 We therefore conclude that Defendant properly preserved an objection to the

 sufficiency of the evidence. See State v. Golder, 374 N.C. 238, 246, 839 S.E.2d 782,

 788 (2020) (holding that a defendant preserves all insufficiency of the evidence issues

 by making a timely motion to dismiss).

 II. Statutory Rape as Predicate Felony

¶ 22 Defendant argues that statutory rape is a strict-liability offense, and as such,

 it cannot serve as a predicate felony for a felony-murder charge because it lacks any

 element of criminal intent. We disagree.

¶ 23 Section 14-17(a) of the North Carolina General Statutes defines first-degree

 murder and enumerates the offenses that may serve as predicate felonies for first-

 degree murder under the felony-murder rule: “A murder . . . which shall be committed

 in the perpetration or attempted perpetration of any arson, rape or a sex offense,
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 robbery, kidnapping, burglary, or other felony committed or attempted with the use

 of a deadly weapon shall be deemed to be murder in the first degree[.]” Our Supreme

 Court has noted that the predicate crimes listed in § 14-17(a) share a common

 requirement: “actual intent on the part of the accused to commit the crime.” State v.

 Jones, 353 N.C. 159, 169, 538 S.E.2d 917, 925 (2000).

¶ 24 Here, the State predicated Defendant’s felony-murder charge on the crime of

 statutory rape of a child by an adult, as defined by N.C. Gen. Stat. § 14-27.23(a): “A

 person is guilty of statutory rape of a child by an adult if the person is at least 18

 years of age and engages in vaginal intercourse with a victim who is a child under

 the age of 13 years.” The crime of statutory rape does not require proof of knowledge

 of the child’s age, and it “requir[es] nothing more than commission of the act

 prohibited” to support a conviction. State v. Anthony, 133 N.C. App. 573, 578, 516

 S.E.2d 195, 198 (1999), aff’d, 351 N.C. 611, 528 S.E.2d 321 (2000).

¶ 25 Defendant argues that statutory rape lacks the necessary intent to support a

 felony-murder charge—the “actual intent on the part of the accused to commit the

 crime.” Jones, 353 N.C. at 169, 538 S.E.2d at 925. We disagree with Defendant’s

 interpretation of “strict-liability offense.” Rape is a general-intent crime. Id. at 167,

 538 S.E.2d at 924. “[T]he forbidden conduct under the statutory rape provision is the

 act of intercourse itself[.]” State v. Weaver, 306 N.C. 629, 637, 295 S.E.2d 375, 380

 (1982) (citation omitted), disapproved of on other grounds by State v. Collins, 334 N.C.
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 54, 431 S.E.2d 188 (1993). As such, statutory rape is a strict-liability offense only in

 that consent and mistake of age are not valid defenses. Anthony, 133 N.C. App. at

 579, 516 S.E.2d at 198–99. We do not take those limitations on defenses to mean that

 the commission of statutory rape does not require the intent to commit an act, that

 is, sexual intercourse, or “the slightest penetration of the sexual organ of the female

 by the sexual organ of the male.” State v. Murry, 277 N.C. 197, 203, 176 S.E.2d 738,

 742 (1970).

¶ 26 Defendant argues, however, that “[t]he Jones holding limits application of the

 felony murder rule to those felonies with an actual intent element[.]” Jones involved

 an impaired-driving collision that resulted in two deaths; the defendant was

 convicted of, inter alia, first-degree murder under the felony-murder rule, with the

 crime of assault with a deadly weapon inflicting serious injury as the predicate felony.

 353 N.C. at 162–63, 538 S.E.2d at 921. The defendant operated a motor vehicle in a

 culpably or criminally negligent manner such that it constituted a deadly weapon. Id.

 at 164–65, 538 S.E.2d at 922–23.

¶ 27 The Supreme Court examined N.C. Gen. Stat. § 14-17 and determined that

 three types of criminal conduct . . . qualify as first-degree
 murder: (1) willful, deliberate, and premeditated killings
 (category 1); (2) killings resulting from poison,
 imprisonment, starvation, torture, or lying in wait
 (category 2); and (3) killings that occur during specifically
 enumerated felonies or during a felony committed or
 attempted with the use of a deadly weapon (category 3). All
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 of these categories require that the defendant have a mens
 rea greater than culpable or criminal negligence; that is,
 they all require that the defendant had actual intent to
 commit the act that forms the basis of a first-degree
 murder charge.

 Id. at 166, 538 S.E.2d at 923–24 (citation and internal quotation marks omitted).

¶ 28 Importantly, the Jones Court noted that the conduct in category 3 does not

 necessarily require an intent to kill; “however, the actual intent to commit the

 underlying felony is required. This is not to imply that an accused must intend to

 break the law, but rather that he must be purposely resolved to participate in the

 conduct that comprises the criminal offense.” Id. at 167, 538 S.E.2d at 924 (emphasis

 added).

¶ 29 Concluding that all of the enumerated felonies in the murder statute “require

 a level of intent greater than culpable negligence on the part of the accused[,]” id.,

 the Jones Court held that “culpable negligence may not be used to satisfy the intent

 requirements for a first-degree murder charge[,]” id. at 163, 538 S.E.2d at 922.

¶ 30 We disagree with Defendant that statutory rape is analogous to a culpably or

 criminally negligent offense and that it may not serve as a predicate felony for felony

 murder. Indeed, the logic of Jones seems to support a conclusion to the contrary.

 Statutory rape of a child by an adult requires that the defendant “engage[ ] in vaginal

 intercourse with a victim who is a child under the age of 13 years.” N.C. Gen. Stat.

 § 14-27.23(a). We cannot imagine a scenario in which a defendant could “engage[ ] in
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 vaginal intercourse with a victim” in a criminally negligent manner; rather, statutory

 rape, unlike impaired driving that results in death, such as that at issue in Jones,

 requires that the perpetrator “be purposely resolved to participate in the conduct that

 comprises the criminal offense.” Jones, 353 N.C. at 167, 538 S.E.2d at 924. This is

 true regardless of the fact that “an individual may commit the crime of statutory

 [rape] regardless of the defendant’s mistake or lack of knowledge of the child’s age”

 and regardless of the victim’s alleged consent. State v. Sines, 158 N.C. App. 79, 84,

 579 S.E.2d 895, 899, cert. denied, 357 N.C. 468, 587 S.E.2d 69 (2003).

¶ 31 Defendant argues, however, that while attempted statutory rape possesses an

 intent element, completed statutory rape does not. In Sines, the defendant argued

 that “attempted statutory sexual offense is a logical impossibility under North

 Carolina law”2 because “it is logically impossible to have the specific intent to commit

 a strict liability crime which does not require a specific intent.” Id. at 84–85, 579

 S.E.2d at 899–900. Our Court rejected this argument and explained that, in order to

 prove attempt—a specific-intent offense—“the State must show: (1) the intent to

 commit the substantive offense, and (2) an overt act done for that purpose which goes

 2 Statutory sexual offense with a child by an adult is a slightly broader offense than

 statutory rape in that a defendant commits statutory sexual offense by engaging in a “sexual
 act,” N.C. Gen. Stat. § 14-27.28, defined as any act of cunnilingus, fellatio, analingus, anal
 intercourse, or the penetration by any object of the genital or anal opening of a person’s body,
 with a child who is under 13 years old. N.C.P.I.--Crim. 207.45A (2019)
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 beyond mere preparation, but (3) falls short of the completed offense.” Id. at 85, 579

 S.E.2d at 899 (citation and internal quotation marks omitted).

¶ 32 In holding that attempted statutory sexual offense is a valid crime under North

 Carolina law, our Court rejected the defendant’s argument that the offense does not

 require intent:

 [T]he intent required for attempted statutory sexual
 offense is the intent to engage in a sexual act. The intent
 element of attempted statutory sexual offense does not
 require that the defendant intended to commit a sexual act
 with an underage person, but only that [the] defendant
 intended to commit a sexual act with the victim. [The
 d]efendant’s knowledge of [the] victim’s age or [the]
 victim’s consent are not defenses to the crime of attempted
 statutory sexual offense, just like these defenses are not
 valid if the crime of statutory sexual offense is completed.

 Id. at 86, 579 S.E.2d at 900.

¶ 33 The logic and holding of Sines apply with equal force to the issue at hand. It is

 true that “the intent element of . . . statutory [rape] does not require that the

 defendant intend[ ]” to engage in vaginal intercourse with an underage person,

 because mistake or lack of knowledge of age is not a defense. Id. Nonetheless, both

 completed and attempted statutory rape require “that [the] defendant intend[ ] to

 commit a sexual act with the victim.” Id.

¶ 34 Applying the analysis of the Jones and Sines decisions to the facts at hand, we

 conclude that the intent to commit the underlying act of sexual intercourse, inherent
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 in the offense of statutory rape, satisfies the intent required for a crime to serve as

 the basis of a felony-murder charge. Thus, the trial court did not err in denying

 Defendant’s motion to dismiss.

 III. Acquittal of Statutory Rape

¶ 35 Defendant further argues that his first-degree murder conviction must be

 vacated because the jury acquitted him of the predicate felony. Defendant’s argument

 is, in essence, that the jury’s verdicts—finding him guilty of felony murder, with

 statutory rape as the underlying felony, but not guilty of statutory rape—are

 inconsistent and contradictory. We disagree.

¶ 36 First-degree murder under the felony-murder rule does not require proof of

 premeditation and deliberation. State v. Wright, 282 N.C. 364, 369, 192 S.E.2d 818,

 822 (1972). Instead, in felony-murder cases, “there is a fictional transfer of the malice

 which plays a part in the underlying felony to the unintended homicide so that the

 homicide is deemed committed with malice.” State v. Gardner, 315 N.C. 444, 456, 340

 S.E.2d 701, 710 (1986). As we concluded above, statutory rape of a child under 13 by

 an adult may serve as the underlying felony in support of a charge of first-degree

 murder under the felony-murder rule. However, as explained below, the jury need

 not convict on the predicate felony where the evidence presented at trial is sufficient

 to support a conviction of both felony murder and the underlying felony.

¶ 37 In North Carolina, our jurisprudence distinguishes between verdicts that are
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 inconsistent and those that are both inconsistent and legally contradictory. See, e.g.,

 State v. Mumford, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010). “It is firmly

 established that when there is sufficient evidence to support a verdict, mere

 inconsistency will not invalidate the verdict.” Id. (citation and internal quotation

 marks omitted). However, verdicts that are inconsistent and contradictory entitle a

 defendant to relief. Id.

¶ 38 Verdicts are inconsistent when they reflect some logical flaw or compromise in

 the jury’s reasoning. For example, in Mumford, the defendant was convicted of five

 counts of felony serious injury by vehicle but acquitted of the lesser offense of driving

 while impaired. Id. at 401, 699 S.E.2d at 916. Felony serious injury by vehicle, defined

 by N.C. Gen. Stat. § 20-141.4(a3), may be proved by a showing that the defendant

 “was engaged in the offense of impaired driving[.]” The Supreme Court concluded that

 these convictions were merely inconsistent, not legally contradictory, because

 conviction of serious injury by vehicle “does not require a conviction of driving while

 impaired . . . but only requires a finding that the defendant was engaged in the

 conduct described” by the offense of driving while impaired. Mumford, 364 N.C. at

 401, 699 S.E.2d at 916. And because the State presented sufficient evidence to

 support the defendant’s convictions for felony serious injury by vehicle, the defendant

 was not entitled to relief. Id.

¶ 39 On the other hand, a verdict is legally contradictory, or mutually exclusive,
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 when it “purports to establish that the defendant is guilty of two separate and distinct

 criminal offenses, the nature of which is such that guilt of one necessarily excludes

 guilt of the other.” Id. at 400, 699 S.E.2d at 915 (citation omitted). For example, where

 a defendant was convicted of one count of embezzlement and one count of obtaining

 property by false pretenses based on the same facts, the Supreme Court concluded

 that the verdicts were legally contradictory:

 [T]o constitute embezzlement, the property in question
 initially must be acquired lawfully, pursuant to a trust
 relationship, and then wrongfully converted. On the other
 hand, to constitute false pretenses the property must be
 acquired unlawfully at the outset, pursuant to a false
 representation. This Court has previously held that, since
 property cannot be obtained simultaneously pursuant to
 both lawful and unlawful means, guilt of either
 embezzlement or false pretenses necessarily excludes guilt
 of the other. . . .

 [Therefore] a defendant cannot be convicted of both
 embezzlement and false pretenses based upon a single
 transaction[.]

 State v. Speckman, 326 N.C. 576, 578, 391 S.E.2d 165, 166–67 (1990) (citations

 omitted).

¶ 40 Merely inconsistent verdicts do not entitle the defendant to relief. The United

 States Supreme Court settled the issue in United States v. Powell, in which the Court

 addressed an argument that acquittal of a predicate felony necessitated relief from

 conviction for the compound felony:
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 [R]espondent’s argument that an acquittal on a predicate
 offense necessitates a finding of insufficient evidence on a
 compound felony count simply misunderstands the nature
 of the inconsistent verdict problem. Whether presented as
 an insufficient evidence argument, or as an argument that
 the acquittal on the predicate offense should collaterally
 estop the Government on the compound offense, the
 argument necessarily assumes that the acquittal on the
 predicate offense was proper—the one the jury “really
 meant.” This, of course, is not necessarily correct; all we
 know is that the verdicts are inconsistent. The Government
 could just as easily—and erroneously—argue that since the
 jury convicted on the compound offense the evidence on the
 predicate offense must have been sufficient. The problem
 is that the same jury reached inconsistent results[.]

 469 U.S. 57, 68, 83 L. Ed. 2d 461, 470–71 (1984).

¶ 41 Inconsistent verdicts, therefore,

 present a situation where “error,” in the sense that the jury
 has not followed the court’s instructions, most certainly has
 occurred, but it is unclear whose ox has been gored. Given
 this uncertainty, and the fact that the Government is
 precluded from challenging the acquittal, it is hardly
 satisfactory to allow the defendant to receive a new trial on
 the conviction as a matter of course.

 Id. at 65, 83 L. Ed. 2d at 468–69.

¶ 42 Here, Defendant’s convictions are not legally contradictory. The State

 submitted three theories of murder to the jury: (1) first-degree murder based on

 premeditation and deliberation, (2) first-degree murder based on felony murder, and

 (3) second-degree murder. The trial court’s instructions allowed the jury to find

 Defendant guilty of felony murder if it found that he killed Ms. Adams “while
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 committing or while attempting to commit the crime of statutory rape of a child under

 the age of thirteen[.]” The jury found defendant guilty of first-degree murder based

 on felony murder but not guilty of the separately charged offense of statutory rape.

 But the jury may rely on the act of committing or attempting statutory rape in

 support of felony murder without a conviction of statutory rape. See Mumford, 364

 N.C. at 401, 699 S.E.2d at 916; see also N.C. Gen. Stat. § 14-17(a) (“A murder . . .

 which shall be committed in the perpetration or attempted perpetration of any arson,

 rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or

 attempted with the use of a deadly weapon shall be deemed to be murder in the first

 degree[.]” (emphasis added)).

¶ 43 Further, had the jury found Defendant guilty of both felony murder and the

 predicate felony, the trial court would have been required to arrest judgment on the

 predicate felony because “a defendant may not be punished both for felony murder

 and for the underlying, ‘predicate’ felony, even in a single prosecution.” State v.

 Coleman, 161 N.C. App. 224, 234, 587 S.E.2d 889, 896 (2003) (quoting Gardner, 315

 N.C. at 460, 340 S.E.2d at 712). Moreover, the State could have proceeded solely on

 felony murder based on statutory rape without charging statutory rape; indeed, our

 Supreme Court in State v. Carey suggested that

 the better practice where the State prosecutes a defendant
 for first-degree murder on the theory that the homicide was
 committed in the perpetration or attempt to perpetrate a
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 felony under the provisions of G.S. 14-17, would be that the
 solicitor should not secure a separate indictment for the
 felony. If he does, and there is a conviction of both, the
 defendant will be sentenced for the murder and the
 judgment will be arrested for the felony under the merger
 rule.

 288 N.C. 254, 274, 218 S.E.2d 387, 400 (1975), vacated in part on other grounds and

 remanded, 428 U.S. 904, 49 L. Ed. 2d 1209 (1976). Under those circumstances, where

 the State presented sufficient evidence of the predicate felony, we would not doubt

 the jury’s determination that the defendant committed the underlying offense merely

 because there was no conviction on the underlying offense.

¶ 44 That the jury’s verdicts seem inconsistent does not entitle Defendant to relief

 because “it is unclear whose ox has been gored.” Powell, 469 U.S. at 65, 83 L. Ed. 2d

 at 469. Defendant suggests that the jury reached the conclusions it did because it was

 unconvinced that Defendant perpetrated a statutory rape. However, “[i]t is equally

 possible that the jury, convinced of guilt, properly reached its conclusion on the

 [felony-murder charge], and then through mistake, compromise, or lenity, arrived at

 an inconsistent conclusion on the [predicate] offense.” Id. at 65, 83 L. Ed. 2d at 468.

 Here, Defendant “is given the benefit of h[is] acquittal on the counts on which [ ]he

 was acquitted, and it is neither irrational nor illogical to require h[im] to accept the

 burden of conviction on the counts on which the jury convicted.” Id. at 69, 83 L. Ed.

 2d at 471.
 STATE V. WATSON

 2021-NCCOA-186

 Opinion of the Court

 Conclusion

¶ 45 We conclude that statutory rape sufficiently supported Defendant’s felony-

 murder conviction and that the jury’s verdicts were not legally contradictory.

 Accordingly, we conclude that Defendant received a fair trial, free from error.

 NO ERROR.

 Judges WOOD and JACKSON concur.